Good morning, your honors. May it please the court. Jonathan Goldman from the Office of the Attorney General's Office. I'm Jonathan Goldman, the attorney general of the New York Supreme Court, and I'm here to discuss the case of Mr. Merrill. This morning we asked that the court reverse and vacate the judgment below because on this summary judgment record, a reasonable jury could find that the appellee, Ms. Copeland, knowingly and intentionally conveyed false and misleading information to law enforcement and to the prosecution without probable cause. And therefore, that the claims of malicious prosecution and false arrests could be found in plaintiff's favor by that jury. Starting first with the malicious prosecution claim, the district court respectfully, we believe, erred in a few respects. First, to the extent it had earlier found in its decision that a reasonable jury could find under the initiation prong that Ms. Copeland conveyed false information about what J.C. had said to her in the bathroom and omitted the material facts that Ms. Merrill asked for help and said that she had been attacked and otherwise mischaracterized what had happened, that it was error to then impose a heightened competing testimony plus standard on the probable cause prong, which we would submit as explained in our brief. We don't believe this court has endorsed. In fact, we believe that in this court's decision in Rentis v. Ruffin in 2016, that the court at least implicitly eschewed such a standard. At page 221 of that decision, which is reported at 816 F. 3rd, 214, the district court, this court held that the district court erred when it quote, faulted Rentis for failing to produce independent evidence that the defendants lied to prosecutors and for relying instead on his own deposition testimony to contradict the defendants' version of events. At that same page, this court said, quote, at summary judgment, Rentis was entitled to rely on his own page in searching skeptical analyses of the party's testimony in opposition to summary judgment. That was this court again at 221 of the Rentis decision. Similarly here in this case, for the same reasons that the district court found a reasonable jury here could find, could believe Ms. Merrill over Ms. Copeland and find that Ms. Copeland provided false information and materially misleading information to the police and to the prosecution under the initiation prong, that same conclusion should still obtain under the probable cause prong. So, but isn't the existence of independent probable cause a bar on either of these claims? So, I think two responses to that. I think it can be if there is in fact independent probable cause. I think a reasonable jury here could find that there's not for two reasons. One, and as we point out in our brief in this court's decision in Shen versus City of New York, it's important to distinguish between the claim against the individual who provided the false and misleading information to the authorities from the claim against or potential claim, because none was brought in this case, against the authorities who might in good faith be able to rely upon that false information. While you might not have a claim against the authorities who say, well, they provided information that we could rely on even if it was the individual who provided the false information. Otherwise... Right, it wasn't the information from the individual. I understand that your claim doesn't have to be against the police. It could be against the individual. But the individual's false statement, the relevance to your claim is that that's resulted in the arrest for the prosecution. And so, if there is an independent basis for probable cause, apart from the false statements, you still have to address that. Yes, and that was going to be my second point. I think a reasonable jury here could find that there was not independent probable cause, because what the district court found was a basis for independent probable cause was primarily the statements of the two youths, J.C. and G.H. And I think a reasonable jury here could find that if they believe that Ms. Copeland lied in her account, that seriously undermines what J.C. and G.H. said to prosecutors and to law enforcement. Because the only alternative to their account, if Ms. Copeland said, yes, when I went into the bathroom I saw them in this situation, and instead of saying that J.C. said these terrible things that she attributes to him, I don't want to repeat them in the court, they're in our brief, but they're pretty graphic. When I think, as the district court found, a reasonable jury could find that he never said those things to her, and more importantly omitted that when she opened the stall, Merrill said, please don't leave, he just came up behind me and attacked me. That, I think a jury under Reeves, a jury doesn't have to believe what D.A. Hubbard says and what Investigator Mackey said, well that didn't influence me. I think that a jury could find that to be incredible. The fact, though, that there are J.C. and G.H. both are testifying to this, obviously yes, a jury could choose to credit them or not credit them, but when we're talking about the probable cause standard, the idea that there was not probable cause, that the police would not think there was probable cause based on the defendant walking into the bathroom, finding them in that situation, even if she says Ms. Merrill told me that she was attacked, these two boys or individuals who are there say this is what happened, that that's not enough for probable cause? Respectfully, I think that's not enough for probable cause for a few reasons. One, it's not reliable and untainted independent evidence of probable cause. If a reasonable jury could find that, it also was in fact false and fabricated. Why is the testimony of the two males, why is that not, I mean it could be credible or not, but how is their testimony tainted? Well, their testimony I think is undermined because the alternative to their story would be that they engaged in criminal activity and therefore they had a motive to fabricate their account of the event, which Ms. Copeland's account corroborated. Absent Ms. Copeland's account, what they said implicating Ms. Merrill would be undermined because Ms. Copeland would not have said the terrible things that she says J.C. said in this situation and also would have said when I came into this situation which in and of itself she said she didn't see specifically what happened, just the aftermath essentially, which can be consistent with Merrill's account. And if she told the authorities that Merrill had said, please don't leave, he just attacked me, that would have undermined the two youths. And also I would submit that, again, we're looking at the claim against the individual. So you have three individuals essentially who are the witnesses that provided the information that the district court said constituted independent probable cause. If all three of them provided false information, I don't think it's enough to say that, well, the police could have relied on that false information, even though Merrill didn't sue the other two youths. She just sued Copeland in this case. To the extent they all provided false and misleading information to the authorities, that undermines the integrity of the prosecutorial process, the grand jury process, and is sufficient to establish a lack of probable cause for the claims. The same would be true for the false arrest claim as well. The probable cause analysis is somewhat similar. It's actually a little bit less because we don't have to overcome the presumption that arises from the grand jury indictment. But again... But you do have, for the false arrest claim, you have probable cause in the moment. By the time you get to trial or you get to the indictment, you've had development and opportunity to inquire and opportunity to assess credibility. But at that moment of arrest, there is very little information generally available and very little ability to test it. And that standard, for better or for worse, the standard for probable cause is not all that high. I understand that. I appreciate that. And if the malicious prosecution claim is the only claim that survives, we would understand that. But I would submit on the false arrest claim, not to throw it away. Investigator Mackey had testified at the criminal trial that at the time he directed Ms. Merrill's arrest, the only information they had was the depositions. And in those depositions, you have Ms. Copeland making these statements, again, implicating Ms. Merrill, which then corroborates the use and gives no reason to undermine what the use had said. And also omits the material information that Merrill claims she said, which is he attacked me, he came up behind me, I asked her not to leave. And she said, I got you and left, essentially. Which was in the deposition testimony in this case. So I still think there would be enough for the false arrest. But I certainly take your point, Your Honor. And I would agree, then, for the malicious prosecution claim. Yes, they charge her with the oxycodone. J.C. says she brought me a pill. They charge her with that. The pill ends up not to be positive for oxycodone and they have to drop the charges. That, again, reduces his credibility for the malicious prosecution claim. I see I'm over my time. I apologize. Thank you. Thank you, Counsel. You've reserved a couple minutes for rebuttal. May it please the court. My name is Meredith Moriarty and I represent the defendant, Apelli Cren Copeland. Here, there are ample facts and circumstances known by the officers at the time of the arrest and the prosecution to provide probable cause independent of Copeland's allegedly false statements. Namely, the fact that Merrill had been found in a sexual position with a minor in her care. The interviews with the two minors that were consistent with one another, despite the fact that they had been separated. Both of which indicated that the parties had had sex the night before. The examination of the utility belt and the clothes and the surveillance video. These same factors, along with other factors learned during the investigation, such as the fact that Merrill had been found in a darkened room with these two minors, supported a finding of probable cause to prosecute. A plaintiff can defeat a showing of probable cause by producing evidence that the witness knowingly committed fraud and perjury, falsified evidence, or otherwise acted in bad faith. And that that fraud was so material that without the falsified evidence, the law enforcement officer's suspicion would never have risen to probable cause. In other words, in order to survive the motion for summary judgment, the plaintiff must submit sufficient evidence for a reasonable juror to find that the indictment was the result of intentional fraud. There is no evidence that Copeland purposefully lied to law enforcement in order to have Merrill arrested. There's no evidence that her statements about what was said in the bathroom had any effect on law enforcement officers' determination to arrest and prosecute Merrill. Can I just ask you, when you were discussing earlier listing sort of the information known at the time of the arrest, of course you mentioned the witnesses, but you also said something about the utility belt and the video. What, in your mind, did those add to the question of probable cause? Both the officer and the DA said that they viewed the security video and found that what they saw afterwards, Merrill was not acting like someone who had just been attacked. She was standing calmly next to the person who allegedly had attacked her. They did not find her demeanor to be someone who was just attacked. Additionally, the utility belt was something that was described as a complicated method to get off and they found that if it had been a struggle to get the utility belt off, that it would have been difficult to do. But if someone was consensually removing the utility belt, that it would have been easier and the utility belt was not broken or damaged in any way. Merrill has produced no evidence that the alleged misstatements were intentional, as opposed to simply a standard eyewitness account during an upsetting and shocking and quick event where maybe not every detail was remembered. In Cologne, this court has stated, sorry, the court stated that with having different perceptions of events, that's not evidence of bad faith. Conflicting accounts or minor discrepancies do not rise to the level of fraud of falsified evidence. Let's contrast that with cases in which the court denied summary judgment where there was evidence of a coerced confession in Dolores Torres or in Ramos versus City of New York where the plaintiff was accused of sexually abusing a child in his care. There his employer produced a report and decided that there was no indication of abuse. Subsequently, exculpatory evidence was taken out of that report and more finding was changed to indicate that there was abuse. There the court held that this is the type of falsified evidence that would, if proved, be used to overcome probable cause. Here there is no such allegation of such falsified evidence. Additionally, in order to overcome the showing of probable cause, a plaintiff cannot simply assert that the defendant lied. As with all summary judgment motions, the plaintiff has the burden to produce some admissible evidence showing that there is a genuine issue of material fact on the issue. Your friend cites Ms. Rentis' Ruffin case for the proposition that his client's testimony was sufficient. Yes, Your Honor. In Rentis' case, while the court did say that the plaintiff can rely on their own testimony, they said so in the context that courts should not be searching the record in opposition. There in Rentis' there also was additional evidence beyond his own testimony in the form of photos that supported his version of events. Additionally, in Rentis' the court cited Rivera in support for its conclusion. And in Rivera the court stated that summary judgment is proper when there is nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete statements. Here, the only thing supporting her assertions is her affidavit, and that affidavit directly contradicts her own earlier testimony in her criminal trial. In this situation, Merrill is claiming that she, that Copeland failed to tell officers that Merrill asked for help, that she had been pushed into the bathroom, that Copeland lied when J.C. told her, even though Merrill was not present for their interactions, and that Copeland lied when she said that Merrill asked Copeland not to tell anyone what happened. However, in the criminal trial, Merrill testified that she did not tell Copeland that she had been pushed into the stall. She testified that she did not tell Copeland she had been assaulted. She testified that she did not tell Copeland that she had been hurt. She testified that she did not tell Copeland that she was afraid of J.C. or G.H. The sham affidavit doctrine prevents a litigant from defeating a motion for summary judgment by submitting an affidavit that directly contradicts their own prior testimony. Now, the district court held that this doctrine does not apply when the holding defeats the purpose of the sham affidavit doctrine and the summary judgment. The purpose of a motion for summary judgment is to dispose of a factually unsupported claim and to avoid wasteful trials. If a party can create a question of fact simply by submitting an affidavit that directly contradicts their own sworn testimony, it would diminish this court's ability to screen out cases where there is no genuine issue of material fact. This is an important case here, especially because Merrill, excuse me, because Copeland is a mandatory reporter. Under social services law 413 and 419, and I do apologize, that was miscited in my brief. It's social services law 413 and 419. There is a presumption that mandatory reporters are operating under good faith. Merrill cannot overcome this presumption and show bad faith, the bad faith that is necessary in order for her to succeed, on nothing but allegations that she made certain statements in the bathroom. If the presumption of good faith can be overcome by mere protestations of innocence, in reality there is no presumption at all. And all mandatory reporters will find themselves caught in a but they may be held civilly liable for false arrest or malicious prosecution if it's determined that they don't report every detail accurately. Mandatory reporters are immune from liability stemming from their reports unless they engage in willful misconduct or negligence under social services law 419. This advances the public policy of encouraging reports of child abuse. Merrill has not alleged or given any evidence that Copeland engaged in willful misconduct or negligence. To hold a witness to a crime to the high standard that Merrill is advocating for is unreasonable and bad public policy. If the appellant's interpretation of the law is accepted by this court, any defendant who is found not guilty would have a viable claim for false arrest if they simply submit an affidavit that the witness did not report all details accurately. What witness would then voluntarily report a crime knowing that they may be sued if they cannot remember every detail accurately? In conclusion, because there was probable cause and Merrill offered no evidence that presented false and material evidence to the law enforcement officers, this party asked that the district court's opinion should be affirmed and claims against the appellee defendant should be dismissed. Thank you. Thank you, counsel. Mr. Goldman, you're reserved two minutes for a vote. Thank you, your honor. The sham affidavit doctrine does not apply here because Merrill testified at her deposition in this case at page 308 of the joint appendix, starting at lines 2 through page 309, line 1, what exactly she said when the stall door was open. I said, help. I said, he's attacking me. She shook her head and said, no, I got you. I begged her not to go. I said, please don't go. He attacked me. He pushed me into the stall and said, again, please do not leave. Whether she omitted that for whatever reason at her criminal trial earlier presents a credibility issue that could be argued at trial. She also didn't report that to the police, right? She did report that to the police when she met with Investigator Mackey. She wasn't interviewed at the YLA according to her, and her version has to be accepted. She wasn't able to give her version until she requested counsel. She's being charged with serious crimes. I think any reasonable person would do that. But she did state that she was the one who was attacked to Mackey. She didn't have to provide a declaration on summary judgment. She did so to put her narrative in a streamlined fashion, to also address certain points raised that may not have come out of her deposition. And we also cite the deposition testimony at opposition. So the sham affidavit doctrine is just entirely inapplicable. I think the district court's conclusion at note 20 of her decision in the special appendix is absolutely correct. With respect to the mandatory reporter, I agree. Mandatory reporters have an obligation to report. They have an obligation to report truthfully and accurately, which is why there are exceptions in the law against reports made in bad conduct. Not just based on Merrill's testimony, but also on the fact that Copeland at her deposition was asked several times, what did J.C. say at various occasions? And she provided all the information, and she never once said the things that she had put in her deposition that night. Falsus in uno. The district court found that a reasonable jury could find that she lied when she put in her deposition that J.C. said those things. The district court found that a reasonable jury could find that Ms. Copeland lied when she omitted what Merrill says actually happened in the stall. So I think if a reasonable jury found those things, it could find that these were knowingly and intentional lies under falsus in uno and otherwise. Again, I've gone over. I apologize if there's no other questions. We ask for reversal. Thank you very much.